**FILED - GR**

February 13, 2009 2:39 PM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: _rmw___/_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

METROPOLITAN HOSPITAL,
a Michigan non-profit corporation          )
                                           )
              *Plaintiff,*                 )
                                           )
        v.                                 )
                                           )
UNITED STATES DEPARTMENT                   )
OF HEALTH AND HUMAN SERVICES               )
                                           )
        -- and --                          )
                                           )
CHARLES E. JOHNSON, Acting Secretary of the )
U.S. Department of Health and Human Services )
                                           )
              *Defendants.*                )

**1:09-cv-128**

**Paul L Maloney**
**Chief U.S. District Judge**

## COMPLAINT

### NATURE OF ACTION

1.   Plaintiff Metropolitan Hospital ("Metro") is a Michigan non-profit

corporation and full-service hospital that has been in operation in Grand Rapids, MI since

1942. It participates as a provider in the federal Medicare program.

2.   Defendant United States Department of Health and Human Services

("HHS"), through its Centers for Medicare and Medicaid Services ("CMS"), amended a

regulation at 42 C.F.R. § 412.106(b) ("the amended regulation") addressing the calculation of

the "disproportionate share hospital" ("DSH") adjustment with respect to a hospital's

reimbursement under the Medicare program. The amended regulation took effect on October

1, 2004 and impacts Metro's Medicare reimbursement for hospital fiscal year ("FY") 2005

and thereafter.

3. Applying the amended regulation, Metro's Medicare fiscal intermediary issued a "notice of program reimbursement" reducing Metro's DSH adjustment for FY 2005 by $2,179,740. Metro appealed the reduction to the Provider Reimbursement Review Board ("PRRB") within HHS, which granted the hospital's request for expedited judicial review ("EJR") pursuant to 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1842. A copy of the PRRB's decision of December 16, 2008 is appended to this Complaint as Attachment A.

4. The amended regulation is inconsistent with the federal statute governing calculation of DSH adjustments, 42 U.S.C. § 1395ww(d)(5)(f)(vi), and case law interpreting that provision. As such, it is an arbitrary and capricious exercise, taken in excess of Defendants' statutory jurisdiction, authority, or limitations, and in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C).

5. Plaintiff Metro seeks an injunction barring Defendants from enforcing those aspects of the amended regulation which are inconsistent with federal statute and a declaration as to the proper method for determining its DSH adjustment.

## JURISDICTION AND VENUE

6. This case arises under provisions of the Social Security Act, 42 U.S.C. § 1395ww(d)(5)(F)(vi), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2), and this Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1331.

7. Venue in this Court is proper under 28 U.S.C. § 1391(e)(3) and 42 U.S.C. § 1395oo(f)(1), because Plaintiff Metro is located in this District..

8. The amount in controversy is $2,179,740.

2

## PARTIES

9. Plaintiff Metro is a Michigan non-profit corporation and full-service hospital that has been in operation in Grand Rapids, MI since 1942. It participates as a provider in the federal Medicare program.

10. Defendant HHS is an executive branch agency of the United States. CMS is a federal agency within HHS. Through CMS, HHS is the federal agency responsible for administering the Medicare and Medicaid programs.

11. Defendant Charles E. Johnson is the Acting Secretary of HHS. In that capacity, he is responsible for the overall administration of HHS. Acting Secretary Johnson is sued in his official capacity.

## BACKGROUND

### The Medicare Program and DSH Payments

12. In 1965, Congress enacted Title XVIII of the Social Security Act, thereby creating a federal health insurance system for the elderly and disabled known as "Medicare." See 42 U.S.C. § 1395c et seq. The same year, Congress also enacted Title XIX of the Social Security Act, known as "Medicaid," to provide grants to States for the purpose of furnishing medical assistance to families with dependent children and to aged, blind and disabled individuals whose income and resources are insufficient to meet the costs of necessary medical services. 42 U.S.C. § 1396 et seq. Individuals who are eligible for benefits under both Medicare and Medicaid are known as "dual-eligibles."

13. The Hospital Insurance component of Medicare ("Part A") reimburses health care providers for certain expenses associated with inpatient hospital care. Generally, Part A of Medicare is automatically provided to individuals over the age of sixty-five or

3

individuals disabled for more than twenty-four months, provided that they or their spouse has worked for at least ten years in Medicare-covered employment. See 42 U.S.C. § 1395c. This case involves reimbursement under Part A of the Medicare program.

14. Medicare Part A coverage is based on a benefit period or "spell of illness." A "spell of illness" is the period of time during which a patient is a hospital inpatient for a particular illness or injury, plus any recovery time in a nursing facility or with home care. See 42 U.S.C. § 1395x(a). The benefit period begins the first day in the hospital and continues until an individual has been out of the hospital for sixty consecutive days. See id. If the patient is in the hospital for more than sixty days, Part A will pay part of the costs for days 61 to 90. See 42 U.S.C. § 1395e(a)(1). Beneficiaries are also entitled to a lifetime reserve of 60 additional days, to be used at their option. See 42 U.S.C. § 1395d(a). Individuals who are hospitalized for more than 90 days in a spell of illness (and who have not elected to use their lifetime reserve days) are considered to have exhausted their Medicare Part A coverage, and Medicare will not pay for any more days of care during that spell of illness. See 42 U.S.C. § 1395d(b). After the patient has been discharged for more than sixty days, a new benefit period will begin. See 42 U.S.C. § 1395x(a).

15. Payments for Medicare Part A services are administered by "fiscal intermediaries," commonly private insurance companies, which contract with the federal government. See 42 U.S.C. § 1395kk-1. The intermediary reviews and audits the information submitted by a provider in its annual cost report and determines the amount of reimbursement a particular provider should receive for services rendered to patients enrolled in Medicare. Id.

16. Under the Medicare statute there are a number of provisions that adjust reimbursements based on hospital-specific factors. See 42 U.S.C. § 1395ww(d)(5). One such factor is the hospital-specific disproportionate share hospital (DSH) adjustment, which requires the Secretary to provide increased reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients." 42 U.S.C.§ 1395ww(d)(5) (F)(i)(I).

17. Under the statute, a hospital's "disproportionate patient percentage" ("DSH percentage") is calculated to determine whether a hospital will receive a DSH reimbursement and what the amount of reimbursement should be. See 42 U.S.C. § 1395ww (d)(5)(F)(v). The DSH percentage is the sum of two fractions, the "Medicare fraction" (also known as the "Medicare proxy" or "Medicare computation") and the "Medicaid fraction" (also known as the "Medicaid proxy" or "Medicaid computation") for a hospital's fiscal period. 42 U.S.C. § 1395ww(d)(5)(F)(vi). The higher a hospital's DSH percentage, the higher the amount of its DSH adjustment. See 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

18. As set forth in the statute, the numerator of a hospital's Medicare fraction is the number of hospital patient days for patients "entitled to" both Medicare Part A and Supplemental Security Income ("SSI"), excluding patients receiving state supplementation only, and the denominator is the number of patient days for patients "entitled to" Medicare Part A. See 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).

19. The numerator of a hospital's Medicaid fraction is the number of hospital patient days for patients who were "eligible for" medical assistance under a State Plan approved under Title XIX (Medicaid) for such period but not "entitled to" benefits under

5

Medicare Part A, and the denominator is the total number of the hospital's patient days for such period. See 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).

20. In the early 1990s, CMS interpreted the phrase "eligible for medical assistance" in the Medicaid fraction to include only days paid for by Medicaid, and not all days of care provided to individuals who were eligible for Medicaid. For hospitals, this interpretation resulted in a smaller Medicaid fraction (and ultimately, a smaller disproportionate patient percentage and therefore a smaller DSH adjustment) than would have been the case if all days of care provided to Medicaid patients had been included in the numerator of the Medicaid fraction.

21. In a series of cases, federal courts rejected CMS's interpretation of the numerator of the Medicaid fraction as including only days of care paid for by Medicaid. The courts unanimously held that the CMS interpretation was too narrow and that Congress intended the phrase "eligible for medical assistance" to be broader than those who were "entitled to" a benefit, and that CMS should include all days of care provided to Medicaid patients, even if not paid for by Medicaid. See Jewish Hosp., Inc. v. Sec'y of Health and Human Servs., 19 F.3d 270 (6th Cir. 1994); Cabell Huntington Hosp. v. Shalala, 101 F.3d 984 (4th Cir. 1996); Legacy Emanuel Hosp. and Health Ctr. v. Shalala, 97 F.3d 1261 (9th Cir. 1996); Deaconess Health Servs. Corp. v. Shalala, 83 F.3d 1041 (8th Cir. 1996).

22. In response to these cases, in January 2001, the Secretary issued a Program Memorandum to clarify the definition of Medicaid days in Medicare disproportionate share policy. The Program Memorandum reversed the prior position and stated that all days of care provided to patients eligible for Medicaid should be included in the numerator of the Medicaid fraction. See Health Care Financing Administration, Program

6

Memorandum for Intermediaries: Clarification of Allowable Medicaid Days in the Medicare Disproportionate Share Hospital (DSH) Adjustment Calculation, Transmittal A-01-13 (Jan. 25, 2001), at 1-2.

## Treatment of Dual Eligibles with Exhausted Medicare Benefits in the DSH Regulations

23. CMS's regulations governing calculation of the DSH adjustment in the Medicare program can be found at 42 C.F.R. § 412.106(b).

24. At all relevant times, the regulations have provided that the numerator of the Medicaid fraction is determined by "the number of the hospital's patient days of service for which patients were eligible for Medicaid but not entitled to Medicare Part A." 42 C.F.R. § 412.106(b)(4) (emphases added).

25. Prior to October 1, 2004, the regulation provided that the numerator of the Medicare fraction was determined by the number of "covered" patient days furnished to patients who were "entitled to" both Medicare Part A and SSI benefits. See 42 C.F.R. § 412.106(b)(2)(i).

26. On May 19, 2003, CMS published a notice of proposed rulemaking in which it proposed for the first time that the hospital patient days of dual-eligible beneficiaries with exhausted Medicare benefits should be counted in the numerator of the Medicaid fraction. To implement this change, it did not propose making any alterations to the actual wording of the regulation. See 68 Fed. Reg. 27153, 27,207 (May 19, 2003). The proposed rule erroneously stated that CMS had been permitting hospitals to include "exhausted" Medicare days in the numerator of the Medicare fraction. CMS later published a retraction of that statement, noting that the regulation determining the Medicare fraction was limited expressly to "covered" days. See 69 Fed. Reg. 48916, 49,098 (August 11, 2004).

7

27. On August 11, 2004, CMS published a final rule in which it determined not to follow its May 19, 2003, proposal. See id. Instead, it determined to strike the word "covered" from its regulation setting forth the determination of the numerator for the Medicare fraction. See 42 C.F.R. § 412.106(b)(2)(i). Under CMS's interpretation of its amended regulation, days of care provided to a dual-eligible who has exhausted his or her Medicare coverage (i.e., a person no longer "entitled to" Medicare) should be counted in the numerator of the Medicare fraction, rather than in the numerator of the Medicaid fraction.

28. Prior to the amendment in 2004, in disputes between hospitals and their fiscal intermediaries as to how to account for days of care provided to dually eligible patients who had exhausted their Medicare coverage (and whose care is therefore paid for by Medicaid), the PRRB has consistently ruled that the days of care provided to such individuals shall be included in the numerator of the Medicaid fraction, because Congress intended such days to be included in the calculation of the DSH percentage and they could not be included in the Medicare fraction. See Jersey Shore Medical Center v. Blue Cross and Blue Shield Ass'n/Blue Cross and Blue Shield of New Jersey, No. 99-D4, 1998 WL 773617 (P.R.R.B. Oct. 30, 1998); Edgewater Medical Center v. Blue Cross and Blue Shield Ass'n/Blue Cross and Blue Shield of Illinois, No. 2000-D44, 2000 WL 394354, at *4 (P.R.R.B. Apr. 7, 2000); Alhambra Hospital v. Blue Cross Blue Shield Ass'n, No. 2005-D47, 2005 WL 2405778 (P.R.R.B. July 29, 2005). These decisions were then overruled by the CMS Administrator.

29. After the 2004 amendment, the PRRB concluded that congressional intent to include Medicare exhausted days in the DSH percentage was satisfied by the amendment allowing exhausted days to be included in the numerator of the Medicare fraction. See Alhambra Hospital v. Blue Cross Blue Shield Ass'n, No. 2005-D47, 2005 WL 2405778

(P.R.R.B. July 29, 2005). But the 2004 amendment does not result in the inclusion of all exhausted days in the DSH percentage calculation, because the numerator of the Medicare fraction (unlike the numerator of the Medicaid fraction) is expressly limited to the days of care for individuals who are also eligible for SSI payments. Compare 42 C.F.R. § 412.106(b)(2)(i) (Medicare fraction), with 42 C.F.R. § 412.106(b)(4) (Medicaid fraction). Many dual-eligible beneficiaries do not receive SSI payments. Under the amended regulation, the exhausted Medicare days of these dual-eligibles are included in neither the Medicare numerator nor the Medicaid numerator. They are thus entirely unaccounted for in the calculation of a hospital's DSH percentage.

30. Pursuant to the amended regulation as applied by CMS and the PRRB, days of care for some dual-eligibles who are no longer "entitled to" Medicare coverage are counted in the numerator of the Medicare fraction, notwithstanding the federal statute providing that only the days of care for those "entitled to" Part A and SSI should be included therein. See 42 U.S.C. § 1395ww(d)(5)(F) (vi)(I). Conversely, days of care for dual-eligibles who are no longer "entitled to" Part A coverage are excluded from the numerator of the Medicaid fraction, notwithstanding the federal statute providing that the days of care for those "eligible for" Medicaid and not "entitled to" Part A benefits should be included therein. See 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

## Metropolitan Hospital's DSH Reimbursement

31. In 1985, working closely with the Michigan Department of Community Health ("MDCH"), which is the state agency responsible for administering the Michigan Medicaid program, Plaintiff Metro established an Assisted Breathing Center ("ABC") to provide acute care services to ventilator-dependent patients. ABC patients require ventilator

9

services at least six hours a day and have multiple co-morbidities such as diabetes, pneumonia, chronic obstructive pulmonary disease, urinary tract infections, bowel issues, and other physical, cognitive, and/or functional limitations. Patients in the ABC have complex medical needs that generally cannot be managed in a skilled nursing facility, and the admissions criteria for the ABC exceed those for other inpatient services. ABC patients typically are in the hospital for many months, sometimes years, while the hospital physicians and staff work to wean them from the ventilators, thereby permitting patients to return to a home- or community-based setting.

32. Virtually all of the patients served by Metro in the ABC are eligible for Medicaid coverage. The Michigan Department of Community Health supported the creation of the ABC and from its inception has referred high acuity patients to Metro from across the State. Under the terms of Metro's contract with the Department, each admission of a ventilator-dependent patient who is a Medicaid beneficiary must be prior-authorized by the Department. Among the considerations for prior authorization is that all Medicare benefits must be exhausted and that Medicaid is the sole remaining payor for the patient's long term care. Consequently, Metro has billed only Medicaid for the care provided to Medicaid-eligible patients who have been admitted pursuant to the authorization of the Michigan Medicaid agency.

33. From the inception of the ABC in 1985, Metro has counted those patients in the Medicaid fraction of its Medicare DSH percentage, *i.e.*, as patients who "were eligible for Medicaid but not entitled to Medicare Part A." 42 C.F.R. § 412.106(b)(4).

34. Consistent with its longstanding practice, Metro counted the dual-eligible patients with exhausted Medicare Part A benefits in the Medicaid fraction when it filed its cost report for FY 2005. Metro's fiscal intermediary, National Government Services ("NGS"), audited the report and issued a Notice of Program Reimbursement ("NPR") on March 28, 2008. In the NPR, NGS reduced Metro's DSH percentage from 26.28% to 14.06%, on the ground that Metro may not include any patient days for the dual-eligible patients in the numerator of the Medicaid proxy, even though Michigan Medicaid had paid for all of the care provided to the patients in the ABC, and Medicare had not paid for any of the care.

35. Most of the dual eligible patients in Metro's ABC unit do not receive SSI, although many do qualify for other forms of federal disability payments. As a result, the fiscal intermediary excluded most of the dual eligible patients in Metro's ABC unit from the hospital's DSH calculation. These ABC patients were not included in the Medicare fraction because they do not receive SSI payments, and they were not included in the Medicaid fraction because the intermediary considered them to be "entitled to" Medicare Part A benefits, even though they had exhausted their Medicare benefits and Medicaid had paid for their care. As a result of excluding these patients from the numerator of the Medicaid fraction, Metro's DSH percentage was reduced by $2,179,740 in fiscal year 2005.

## The Administrative Action

36. On March 28, 2008, Metro received its final NPR from its fiscal intermediary, NGS.

11

37. Whenever a Medicare provider disputes an intermediary's final reimbursement determination, it may appeal that determination to the PRRB. See 42 U.S.C. § 1395oo(a). Metro filed a timely appeal with the PRRB.

38. Medicare providers have a right to obtain expedited judicial review ("EJR") of a fiscal intermediary's action whenever the PRRB determines that "it is without authority to decide" a question of law or regulations relevant to the matters in controversy. See 42 U.S.C. § 1395oo(f)(1). The PRRB will grant EJR in matters where it finds that it has jurisdiction, there are no findings of fact for its resolution, and the validity of a regulation by which it is bound is at issue. See 42 C.F.R. § 405.1842(f).

39. On July 2, 2008, Metro filed a request for EJR with the PRRB, arguing that the validity of 42 C.F.R. § 412.106(b) was at issue in its appeal of its NPR. Metro asserted that the regulation is inconsistent with federal statute and congressional intent.

40. On December 16, 2008, the PRRB granted Metro's Request for EJR, holding that the PRRB does not have the authority to decide the legal question of whether 42 C.F.R. §412.106(b) is valid and giving Metropolitan Hospital sixty days to institute an action for judicial review. See Metropolitan Hospital, PRRB Case No. 08-2200 (2008), attached hereto as Attachment A.

### COUNT I
### (Agency Action in Violation of the
### Social Security Act, 42 U.S.C. § 1395ww(d)(5)(F)(vi))

41. Plaintiff repeats and re-alleges every allegation in paragraph 1 through 40 of this Complaint as if fully set forth herein.

42. The case law makes clear that Congress intended the words "eligible for" and "entitled to" as used in 42 U.S.C. § 1395ww(d)(5)(F)(vi) to have different and precise

12

meanings. CMS's amended regulation, and the fiscal intermediary's application of same, ignores those meanings. As a result, many impoverished patients whose care is covered by Medicaid are being excluded from the calculation of Metro's DSH percentage for the sole reason that they are also enrolled in the Medicare program, thereby depriving Metro of critically-needed funds that help support continued services to Medicaid patients. The amended regulation at 42 C.F.R. § 412.106(b) therefore violates federal law and contravenes congressional intent to make DSH funds available to hospitals serving a disproportionate number of low-income Medicare and Medicaid patients.

## COUNT II
### (Agency Action in Excess of Statutory Jurisdiction, Authority, or Limitations, 5 U.S.C. § 706(2)(C))

43. Plaintiff repeats and re-alleges every allegation in paragraphs 1 through 40 of this Complaint as if fully set forth herein.

44. The amended regulation constitutes final agency action under the APA. Under the APA, 5 U.S.C. § 706(2)(C), this Court is required to hold unlawful and to set aside final agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

45. The amended regulation is in excess of statutory jurisdiction, authority, or limitations as set forth in 42 U.S.C. § 1395ww(d)(5)(F)(vi).

## COUNT III
### (Arbitrary and Capricious Agency Action, 5 U.S.C. § 706(2)(A))

46. Plaintiff repeats and re-alleges every allegation in Paragraphs 1 through 40 of this Complaint as if fully set forth herein.

47. The amended regulation constitutes final agency action under the APA. Under the APA, 5 U.S.C. § 706(2)(A), this Court is required to hold unlawful and to set aside

final agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."

48. The amended regulation is arbitrary, capricious, and not in accordance with law because it contravenes 42 U.S.C. § 1395ww(d)(5)(F)(vi).

## RELIEF

WHEREFORE, the Plaintiff asks this Court to award relief as follows:

### A. Declaratory Relief

Plaintiff asks this Court to issue a declaratory judgment that 42 C.F.R.

§ 412.106(b) is invalid and in violation of 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) to the extent it calls for the inclusion of days of care furnished to patients who are not "entitled to" Part A benefits (including dual-eligibles who have exhausted their Part A coverage) in the numerator of the Medicare fraction.

Plaintiff asks this Court to issue a declaratory judgment that 42 C.F.R.

§ 412.106(b) is invalid and in violation of 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) to the extent it bars inclusion of days of care furnished to patients who are "eligible for" Medicaid and not "entitled to" Part A benefits (including dual-eligibles who have exhausted their Part A coverage) in the numerator of the Medicaid fraction.

### B. Injunctive Relief

Plaintiff asks this Court to order the Defendants to instruct their Medicare fiscal intermediaries to allow hospitals to include days of care furnished to patients who are "eligible for" Medicaid and not "entitled to" Part A benefits (including dual-eligibles who have exhausted their Part A coverage) in the numerator of the Medicaid fraction, in accordance with 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

14

**C.    Other Relief**

Plaintiff asks this Court to:

1.    Order a speedy hearing of this matter and advance it on the calendar;

2.    Award Plaintiff such additional relief as may be just and proper, including

interest on the recovered DSH funds pursuant to 42 U.S.C. § 1395oo(f)(2); and

3.    Retain jurisdiction of this action for such additional and supplemental

relief as may be required.

Respectfully submitted,

William W (Jack (P22403)
Thomas M. Weibel (P26814)
Kristen E. Ray (P72148)
Smith Haughey Rice & Roegge
250 Monroe, N.W., Suite 200
Grand Rapids, MI 49503
Tel: 616-774-8000
Fax: 616-774-2481
tweibel@shrr.com
wjack@shrr.com

Caroline M. Brown
Joseph Zambuto, Jr.
Covington & Burling LLP
1201 Pennsylvania Avenue NW
Washington, DC 20004-2401
Tel: (202) 662-6000
Fax: (202) 778-6000
cbrown@cov.com
jzambuto@cov.com

15

SHRR 1495002v1